IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Kimberly M. Green, ) | Civil Action No.: 2:12-cv-02493-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Carolyn W. Colvin, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court after the issuance of the Report and Recommendation ("R&R") of United States Magistrate Judge Bruce Howe Hendricks.[1] Plaintiff Kimberly M. Green brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act ("the Act"). In the R&R, the Magistrate Judge recommends reversing the decision of the Commissioner and remanding the matter for further administrative action.

## FACTUAL FINDINGS AND PROCEDURAL HISTORY

Plaintiff applied for disability insurance benefits and supplemental security income benefits in February 25, 2010, alleging a disability as of June 12, 2009. The applications were denied initially and on reconsideration. Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). That hearing was held on April 5, 2011, and Plaintiff appeared and testified. A vocational

---

[1] In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2) (D.S.C.), this matter was referred to the Magistrate Judge.

expert also testified. The ALJ issued a decision dated May 26, 2011, finding that Plaintiff was disabled through the date of the decision. The ALJ's overall findings were as follows:

> 1. The claimant will meet the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since June 12, 2009, the alleged onset date (20 CFR. 404.1571, *et seq*., and 416.971, *et seq*.).
>
> . . .
>
> 3. The claimant has the following severe impairments: lumbar degenerative disc disease, major depressive disorder, visual impairment, asthma, and chronic pain syndrome (20 CFR 404.1520(c) and 416.920(c)).
>
> . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the criteria of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours each in an 8-hour work day. However, the claimant should be allowed the freedom to change positions. The claimant can push and pull within the above pound limits. The claimant should avoid repetitive bending and twisting, but can do so occasionally. She should also avoid climbing ladders, ropes, and scaffolds, but can perform all other postural activities occasionally. The claimant should avoid hazards, such as dangerous moving machinery and unprotected heights. She should also avoid concentrated exposure to dust, fumes, gases, and poor ventilation. Additionally, the claimant should avoid jobs that require fine vision, such as reading very small print, smaller than newspaper print, and fine visual discrimination. The claimant is limited to simple routine repetitive tasks in a stable environment with infrequent and gradual changes. The claimant

>   should avoid ongoing interaction with the general public but may have casual interaction. Likewise, the claimant should avoid more than casual interaction with co-workers.
>
>   . . .
>
>   6.    The claimant is unable to perform past relevant work (20 CFR 404.1565 and 416.965).
>
>   . . .
>
>   7.    The claimant was born on July 29, 1965, and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
>   8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
>   9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
>   10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

Tr. 24–33.

The ALJ's finding became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for further review. On August 29, 2012, Plaintiff filed this action seeking judicial review of the Commissioner's decision. Compl., ECF No. 1. Both Plaintiff and the Commissioner filed briefs, ECF Nos. 14, 15, 16, and the Magistrate Judge issued her Report and Recommendation ("R&R") on February 25, 2014, recommending that the Commissioner's decision be reversed and remanded, R&R, ECF No. 18. The Commissioner filed timely objections to the

3

R&R on March 14, 2014, Def.'s Objs., ECF No. 19. Plaintiff did not file a response to the Commissioner's objections.[2]

## STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Act is a limited one. The Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citations omitted).

This statutorily mandated standard precludes a *de novo* review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *See Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court "must uphold the factual findings of the [Commissioner] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1973) (holding that the Court must uphold the decision supported by substantial evidence "even should [it] disagree"). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole

---

[2] The deadline for Plaintiff's response was March 31, 2014—the same day the Court is required to report matters pending for more than six months. *See* 28 U.S.C. § 476. In an effort to dispose of the matter in a timely fashion, the Court contacted Plaintiff to inquire whether she intended to file a response to the Commissioner's objections. Plaintiff represented to the Court that she would not. Accordingly, the Court shall rely on the arguments thoroughly raised by Plaintiff in her initial and reply briefs in conducting its *de novo* review of the R&R.

4

record to assume that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

Furthermore, a *de novo* review is conducted of the Magistrate Judge's R&R. 28 U.S.C. § 636(b)(1). The R&R is only a recommendation to the Court and has no presumptive weight; indeed, the responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court is charged with making a *de novo* determination of those portions of the R&R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. § 636(b)(1).

The right to *de novo* review, however, may be waived by the failure to file timely objections. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations." *Id.* Moreover, in the absence of objections to the R&R, the Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). In that event, however, the Court must " 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

## APPLICABLE LAW

Under the Act, Plaintiff's eligibility for the benefits she is seeking hinges on whether she is under a "disability." 42 U.S.C. § 423(a). The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months . . . ." *Id.* § 423(d)(1)(A). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 991 n.\* (4th Cir. 1985). A claimant may establish a *prima facie* case of disability based solely upon medical evidence by demonstrating that his impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a *prima facie* case of disability by proving that she could not perform her customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975). Because this approach is premised on the claimant's inability to resolve the question solely on medical considerations, it then becomes necessary to consider the medical evidence in conjunction with certain "vocational factors." 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) "residual functional capacity," *id.* §§ 404.1560(a) & 416.960(a); (2) age, *id.* §§ 404.1563 & 416.963; (3) education, *id.* §§ 404.1564 & 416.964; (4) work experience, *id.* §§ 404.1565 & 416.965; and (5) the existence of work "in significant numbers in the national economy" that the individual can perform, *id.* §§ 404.1566 & 416.966. If the assessment of the claimant's residual functional capacity leads to the conclusion that she can no longer perform her previous work, it must be determined whether the claimant can do some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1). The interrelation between these vocational factors is governed by Appendix 2 of Subpart P. Thus, according to the sequence of evaluation suggested by 20 C.F.R. §§ 404.1520 & 416.920, it must be determined: (1) whether the claimant is currently gainfully employed, (2) whether she suffers from some physical or mental impairment, (3) whether that impairment meets or equals the criteria of Appendix 1, (4)

whether, if those criteria are not met, the impairment prevents her from returning to her previous work, and (5) whether the impairment prevents her from performing some other available work.

## ANALYSIS

The Magistrate Judge recommends reversing the Commissioner's final decision and remanding the matter for further administrative action. The Magistrate Judge reports that the findings by the Commissioner at step two of the five-step sequential evaluation process were not supported by substantial evidence and recommends that the case be remanded specifically for a reconsideration of the severity of Plaintiff's migraine headaches and their effect, if any, on her ability to work. R&R 7. Because the error occurred at step two, the Magistrate Judge also reports that a reassessment of the combined effects of all of Plaintiff's impairments and of her credibility would be in order—assessments that Plaintiff also challenges on appeal. *Id.* at 9, 12. In her objections to the R&R, the Commissioner alleges that the Magistrate Judge erred in finding that the case should be remanded. She contends that substantial evidence supports the findings of the ALJ at step two. Specifically, the Commissioner argues that the ALJ properly found that Plaintiff's migraine headaches were not a severe impairment. Accordingly, as a result of the Commissioner's objections, a *de novo* review is necessary.

### I.     *The Severity of Plaintiff's Migraines*

The Magistrate Judge reports that "[i]t seems possible that the ALJ might have concluded differently if he believed there was evidence of "chronic" and "recurrent" migraines. She recommends that, at the very least, the ALJ should have to explain [her] view of such evidence, so that this Court can understand any decision to reject it." R&R 7. In her objections, the Commissioner points, however, that there is no inconsistency between the evidence of "chronic" and "recurrent" migraines and the ALJ's finding that Plaintiff's migraines occurred "only

7

occasionally." Def.'s Objs. 2–4.  Indeed, Plaintiff argued in her brief that the ALJ had "toss[ed] aside [Plaintiff's] allegations of chronic migraine headaches." Pl.'s Br. 14, ECF No 14.

The Social Security regulations define a "non-severe" impairment as an impairment or combination of impairments that do not "significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a).  "Basic work activities" include "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, . . . handling; . . . seeing, hearing, . . . speaking; [u]nderstanding, carrying out, . . . remembering simple instructions; . . . [u]se of judgment; . . . [r]esponding appropriately to supervision, co-workers and usual work situations; and . . . dealing with changes in a routine work setting." 20 C.F.R. §§ 404.1521(b) & 416.921(b). "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984).

In step two of the administrative decision, the ALJ discussed the medical evidence relevant to Plaintiff's migraine headaches, ultimately finding that her migraines constituted a non-severe impairment.  The ALJ found as follows:

> While the claimant reported to the consultative examiner, in September 2010, that she would have daily headaches, she noted that these were not migraines. Instead, the claimant reported she had migraine headaches about once a month. However, the record fails to reflect that she had previously reported these symptoms to her treating primary care physician. While the claimant reported a migraine headache in February 2011, it was noted that generally, these headaches occurred only occasionally.

Tr. 25 (citations omitted).  As further noted by the ALJ, a consultative orthopaedic examiner referred to the migraine headaches which the Plaintiff reported having once a month. *Id.*  The

examiner indicated that Plaintiff "has nausea and vomiting and photophobia when she gets a migraine." Tr. 486.

A review of the specific evidence in the record supports and does not conflict with the ALJ's finding that Plaintiff's headaches are not severe. The records highlighted by Plaintiff in her brief show that she presented at the Trident Medical Center Emergency Room on February 4, 2011, after she submitted her claim giving rise to this action. Tr. 522. The medical records show that Plaintiff came in complaining of chest pain and a headache with vomiting and nausea. It was noted that Plaintiff "has had typical chronic recurrent migraine headaches associated with her chronic back pain and fibromyalgia." Her medications included Topamax and Imitrex, both medicines for treating headaches and migraines. She was admitted to the hospital, and the treatment plan stated, "I suspect that her chest pain workup will be negative. I think this is part of her chronic pain syndrome associated with her headaches, migraine, and low back pain." Tr. 523. It was further noted that Plaintiff had migraines "from time to time" but that they had been more frequent in the previous two weeks. Tr. 531. She was ultimately discharged after two nights in the hospital with the disposition that she would remain on her medications. Tr. 533. The record also contains a letter from her primary care physician, Dr. C. W. Wimberly, Jr., dated February 16, 2011, which states that she has "a history of hypertension, depression, migraine headaches, degenerative disc disease, muscle spasm, and chronic neck and low back pain." He lists Topomax for headaches as one of her medications. Tr. 544. A second letter from Dr. Wimberly dated August 1, 2011, was admitted before the Appeals Council. This letter references the same medical history, including migraines. Tr. 585.

Considering the record before it, this Court must respectfully disagree with the Magistrate Judge's recommendation to reverse the Commissioner's decision because of the ALJ's finding at

step two.  The finding by the ALJ that Plaintiff's migraine headaches are a non-severe impairment is supported by substantial evidence and is not controlled by an error of law.  There is no dispute that the ALJ considered the severity of Plaintiff's headaches at step two.  While Plaintiff points to the descriptions of her migraines in her medical records as "chronic" and "recurrent," the Court is cognizant that these terms provide little explanation of the frequency of Plaintiff's headaches.  The only evidence of her migraines' frequency is the evidence that she had them "from time to time" and that they had become more frequent prior to her February 2011 hospital admission.  Moreover, there is evidence she had them "once a month." Tr. 486.  This Court's limited scope of review prevents it from reweighing the evidence in the record.  As such, the Court finds the ALJ's determination that Plaintiff's occasional migraine headaches cannot be expected to interfere with her ability to work is supported by substantial evidence.  Accordingly, the Commissioner's objections to the Magistrate Judge's R&R are sustained.

## II.     *Plaintiff's Other Issues Raised on Appeal*

Plaintiff also raised two other bases for reversing the Commissioner's decision on appeal.  In the R&R, the Magistrate Judge reported that Plaintiff's other bases were without merit; however, reversal was recommended solely because of the reported error at step two.  Plaintiff did not object to the R&R, and her failure to do so mandates only a review by this Court for clear error.  However, because the Magistrate Judge's recommendations pertaining to those bases are affected by the recommendation—rejected by this Court—relating the severity of Plaintiff's migrates, a *de novo* review of those bases shall be conducted by the Court out of an abundance of caution.  The other two issues raised concern the ALJ's assessments of (1) the combined effects of Plaintiff's impairments, apparently at step three of the five-step sequential evaluation process, and (2) Plaintiff's credibility.  The Court addresses those issues in turn.

### a. The Combined Effect of Plaintiff's Impairments

In the R&R the Magistrate Judge reported that the ALJ did not necessarily err in her consideration of all of Plaintiff's impairments, except to the extent that "there is at least one non-severe impairment not considered in combination with the rest, as required—[Plaintiff's] migraine headaches." In recommending a remand, the Magistrate Judge further accounted for the possibility that Plaintiff's migraines could be determined to be a severe impairment. R&R 9. Plaintiff had argued in her brief that the ALJ had not done an adequate analysis under *Walker v. Bowen*, 889 F.2d 56 (4th Cir. 1989). In her response, the Commissioner points out that the ALJ "specifically stated that she considered the combined effect of Plaintiff's impairments." Def.'s Br. 9.

In *Walker*, the Fourth Circuit emphasized that the Act required consideration of the effect of a claimant's impairments in combination when determining disability. The Commissioner, there, conducted a *fragmented* analysis of the claimant's impairments. 889 F.2d at 50. "He simply noted the effect or noneffect of each [impairment] and found that the claimant could perform light and sedentary work." *Id.* at 49-50. Ultimately, the claimant was found not disabled based on a residual functional capacity to perform "sedentary and light work limited only by his inability to work around unprotected heights because of his seizure disorder." *Id.* at 48. The Fourth Circuit, in order to ensure that the Commissioner conducted a combined effect analysis, held that the administrative decision "must adequately explain [the Commissioner's] evaluation of the combined effects of the impairments." *Id.* at 50. The case was remanded for proper consideration of the combined effect of claimant's impairments. *Id.*

Plaintiff objects to the ALJ's step three assessment of her impairments under Listings 1.04 and 12.04. Plaintiff claims the ALJ improperly used "a series of negative findings" to conclude, in violation of *Walker*, that Plaintiff did not meet a listing. She asserts that "the ALJ ignored relevant

exhibits in her conclusion that her impairments did not equal a Listing singly, or in combination." Pl.'s Br. 15.  This specific evidence that Plaintiff highlights that the ALJ did not consider were summarized by the Magistrate Judge in the R&R: (1) imaging of mild degenerative disc disease; (2) evidence that the plaintiff walked with a cane; (3) evidence, not before the ALJ, that the Plaintiff used a wheelchair; and (4) an assessment of borderline intellectual functioning. *See* R&R 8.  Like the Magistrate Judge, this Court finds Plaintiff's argument unpersuasive.  Read as a whole, the administrative decision shows that the ALJ considered the evidence that Plaintiff claims was ignored. Tr. 28–32.  Moreover, the ALJ "considered the combined effects of [Plaintiff's] impairments both severe and non-severe, and . . . determined that the findings related to them are not at least equal in severity to those described in Listings 1.04 . . . and 12.04," citing *Walker* specifically. Tr. 27; *see also Brown v. Astrue*, No. 0:10-cv-01584-RBH, 2012 WL 3716792, at *6 (D.S.C. Aug. 28, 2012) ("Most importantly, when multiple impairments are present, this Court must be satisfied that the Commissioner's decision regarding disability is not founded on a fragmentized analysis of those impairments.  If the Commissioner's analysis is fragmentized, it is, of course, the Plaintiff's task to adequately show the Court that the Commissioner's decision could have been different had he done an adequate combined effect analysis of his multiple impairments." (citations omitted)).  Plaintiff fails to show how a more-detailed combination of impairments analysis would lead to a decision in her favor.  The ALJ's findings at step three, therefore, are supported by substantial evidence and without legal error.

### b. The Assessment of Plaintiff's Credibility

Finally, Plaintiff challenges the assessment of her credibility on appeal.  In the R&R, the Magistrate Judge notes that Plaintiff "has not made a serious case on the issue of whether or not the ALJ properly assessed her credibility."  However, the Magistrate Judge explained that "credibility

considerations may be reimplicated if [Plaintiff's] migraines are considered to be severe and or otherwise viewed as having created additional work-related limitations." R&R 12. Having rejected the Magistrate Judge's recommendation as to Plaintiff's migraines, the Court turns to Plaintiff's brief, in which she argues that the ALJ's analysis "is premised entirely on her own reading of objective findings." She asserts that "the ALJ's discussion does not present the entire picture and is therefore not reliable." Specifically, she takes issue with the ALJ's mentioning of an incident when Plaintiff "became upset when she was told her Xanax prescription would not be increased." Pl.'s Br. 17. The Commissioner responds that the ALJ's mentioning of the incident was not improper, especially because the observation was made by the doctor involved in the incident. The Commissioner, furthermore, points to other evidence to support the ALJ's credibility findings. Def.'s Br. 21–23.

Under 20 C.F.R. §§ 404.1529(b), "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). The threshold requirement is that there be "a showing by objective [medical] evidence of the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by [Plaintiff]." *Id.* (internal quotation marks omitted). Once the ALJ concludes that this threshold requirement has been met, the ALJ must evaluate "the intensity and persistence of [Plaintiff's] pain, and the extent to which it affects her ability to work."[3] *Id.* at 595.

---

[3] Specifically, the following factors relevant to one's pain and symptoms will be considered by the Commissioner: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate the pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment that the individual uses or has used to relieve pain or other symptoms (such as lying flat on one's back, standing for 15 to 20 minutes each hour, etc.); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

"[T]his evaluation must take into account not only [Plaintiff's] statements about her pain, but also 'all the available evidence,' including [Plaintiff's] medical history, medical signs, and laboratory findings; any objective medical evidence of pain . . . ; and any other evidence relevant to the severity of the impairment, such as evidence of [Plaintiff's] daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." *Id.* (citations omitted). The ALJ may not disregard or discredit Plaintiff's statements about pain "solely because they are not substantiated by objective medical evidence." SSR 96-7p; *see also Craig*, 76 F.3d at 595. The Fourth Circuit has held that once Plaintiff meets the "threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [Plaintiff is] entitled to rely exclusively on subjective evidence to prove the second part of the test, *i.e.*, that [the] pain is so continuous and/or severe that it prevents [Plaintiff] from working a full . . . day." *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006).

However,

> [t]his is not say . . . that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

*Craig*, 76 F.3d at 595. Finally, the ALJ's "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

The Court finds the ALJ properly assessed Plaintiff's credibility. As an initial matter, it is not entirely clear how Plaintiff can argue that the ALJ's consideration of the Xanax incident—the only specific finding cited by Plaintiff in her initial brief—is inconsistent with the evidence in the record. The ALJ's notation of the event is merely a summary of the observations of Dr. Brexann B. Spencer. *See* Tr. 474. Plaintiff assumes that the inclusion of the incident in the discussion shows the ALJ believed Plaintiff "was engaging in some sort of drug-seeking behavior"; however, for this Court to draw such an assumption would be improper in light of the deference the Court must give to the ALJ: it is the ALJ's duty to consider the relevant evidence in the record. In fact, it can just as easily be assumed that the incident cited supports a finding that Plaintiff's mental impairments are more severe (indeed, the ALJ found that Plaintiff suffered from major depressive disorder). In the end, the ALJ assessed the evidence thoroughly, making a finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effect of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity." Tr. 28. The ALJ gave Plaintiff a restrictive residual functional capacity as a result of both her physical and mental impairments. There still, however, was a sufficient number of jobs in the national economy that she could perform. Plaintiff cannot specifically show how the ALJ's credibility findings are not supported by substantial evidence. Accordingly, the Court, in light of the evidence cited by the Commissioner in her brief, finds the decision is supported by substantial evidence.

## CONCLUSION

The Court has thoroughly reviewed the entire record as a whole, including the briefs, the Magistrate Judge's R&R, the Commissioner's objections, and applicable law. For the reasons set forth above and by the Magistrate Judge, the Court hereby agrees with the Commissioner's

objections and rejects the Magistrate Judge's R&R.  Accordingly, the Commissioner's decision is

**AFFIRMED.**

     **IT IS SO ORDERED.**

                                                s/ R. Bryan Harwell
                                                R. Bryan Harwell
                                                United States District Judge

Florence, South Carolina
March 31, 2014